**In re MINTON GROUP, INC., Debtor.**

**Bankruptcy No. 82–B–20590.**
**Adv. No. 82ADV6274.**

United States Bankruptcy Court,
S.D. New York.

Feb. 7, 1983.

Sidney Turner, White Plains, N.Y., for trustee.

Reich & Reich, White Plains, N.Y., for David M. Lee and Paul Barrett, defendants.

## DECISION ON APPLICATION OF TRUSTEE TO AVOID POST–PETITION PERFECTION OF MORTGAGE.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The trustee in this case wishes to be more hypothetical than Code § 544(a)(3) permits and seeks to avoid the post-petition perfection of a mortgage using his "strong arm" powers. Not only would he like to be deemed a bona fide purchaser without knowledge, but he hypothesizes blindness as well.

The trustee maintains that a hypothetical bona fide purchaser of real estate from the debtor at the time when the involuntary petition for relief under Chapter 11 of the Bankruptcy Code was filed, would not be charged with the knowledge that the land records in the office of the county where the real estate was located revealed that the debtor was not then the record owner of the property in question. The trustee's position stems from the fact that the title company for the prepetition vendor of certain real estate to the debtor's limited partnership did not record the deed to the debtor's partnership, nor the mortgage given back by the debtor's partnership, until after the commencement of this Chapter 11 case. Moreover, there is even a question as to whether the debtor was actually involved in the transaction in this case. The debtor, Minton Group, Inc., is a corporation that is the sole general partner of a limited partnership, Rochelle Terrace Associates, in which the debtor has a twenty-five percent interest. The vendor deeded the property to, and the purchase money mortgage was given back by, the limited partnership, Rochelle Terrace Associates, and not by the debtor, the Minton Group, Inc.

The trustee also looks to the so-called strong arm provisions in subsections (a)(1) and (a)(2) of Code § 544 in order to avoid the post-petition recording of the mortgage in question. However, again the fingers on the so-called strong arm do not point to a "transfer of" or an "obligation incurred by" the debtor. Additionally, the trustee asserts Code § 549(a) as a basis for avoiding the post-petition perfection of the mortgage in question.

## FINDINGS OF FACT

1. On September 28, 1982, an involuntary petition for reorganization under Chapter 11 of the Bankruptcy Reform Act of 1978 was filed against the debtor, Minton Group, Inc.

2. The involuntary Chapter 11 petition was unsuccessfully disputed by the debtor at a hearing pursuant to Code § 303(h), resulting in the entry of an order for relief on October 22, 1982.

3. The interim trustee, who was appointed pursuant to Code § 303(a), contin-

ued in office as the operating trustee after the entry of the order for relief.

4. On December 14, 1982, the trustee filed the complaint in this adversary proceeding in accordance with Bankruptcy Rule 701 seeking to avoid a mortgage that was recorded on October 6, 1982 against certain real estate owned by the limited partnership in which the debtor is the sole general partner.

5. After issue was drawn a hearing was held resulting in the following facts having been established:

6. The debtor was and is a corporation known as Minton Group, Inc. Its principal officer and shareholder is an accountant named Walter Wlodarski. Minton Group, Inc. is a general partner in various real estate entities operating as limited partnerships, one of which is known as Rochelle Terrace Associates. The debtor owns a twenty-five percent interest in Rochelle Terrace Associates and various individual investors own the remaining seventy-five percent as limited partners.

7. On November 16, 1981, De Paul Holding Corp., a corporation controlled by David M. Lee and Paul Barrett, sold an apartment building which it owned in Mount Vernon, New York to the limited partnership known as Rochelle Terrace Associates. The purchase price was $265,000. A portion of the price was paid in cash and another portion consisted of the purchaser assuming a first mortgage. The balance of the purchase price was covered by a second mortgage given by Rochelle Terrace Associates to De Paul Holding Corp. in the sum of $132,005.25.

8. The vendor, De Paul Holding Corp. thereafter liquidated after having assigned the second mortgage of $132,005.25 to its principals, David M. Lee and Paul Barret, the defendants in this adversary proceeding.

9. Due to some unexplainable mixup, the title company's representative at the closing on the sale, failed to record the deed from De Paul Holding Corp. to Rochelle Terrace Associates and the second mortgage of $132,005.25, given by the latter to the former, until October 6, 1982. The recording of the deed and mortgage occurred after the involuntary Chapter 11 petition was filed on September 28, 1982 against Minton Group, Inc., the sole general partner of Rochelle Terrace Associates.

*The Hypothetical Bona Fide Purchaser*

Bankruptcy Code § 544(a)(3) introduces a new avoidance power for use by a trustee in bankruptcy. In addition to the power to assert the rights of a hypothetical judicial lien creditor under subsection (a)(1) and a hypothetical unsatisfied execution creditor under subsection (a)(2), a trustee in bankruptcy functioning under the Bankruptcy Reform Act of 1978 now has the mantle of a hypothetical bona fide purchaser of real estate from the debtor at the time of the commencement of the case, whether or not such a purchaser exists. This provision reads as follows:

"(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the *debtor* or any obligation incurred *by the debtor* that is voidable by—

\* \* \* \* \* \*

(3) a bona fide purchaser of real property *from the debtor,* against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists." [Emphasis added].

Thus, the transfer of property or obligation incurred that is the subject of avoidance by the trustee must have been made or incurred *by the debtor.* In addition, the trustee's bona fide purchaser status hypothesizes a purchase of real property *from the debtor.* In this case, the trustee treats the mortgage given by the partnership, Rochelle Terrace Associates, in which the debtor was the sole general partner, as a transfer from the debtor which he wishes to avoid. Assuming, for the moment, the cor-

**388**

rectness of this premise, and that the mortgage may be regarded as having been given by the debtor, Minton Group, Inc., there nevertheless must be someone, even hypothetically, who may qualify as a bona fide purchaser of real property *from the debtor.* In other words, subsection (a)(3) contemplates successive transfers or obligations by the debtor where a later bona fide transferee, even if not in actual existence, could, under applicable law, cut off the rights of an earlier transferee of the debtor at the time the bankruptcy petition was filed.

■ In this case, on September 28, 1982, when the Chapter 11 petition was filed, there was no way that any person could claim to be a bona fide transferee from the debtor. This is so because the county recording office records where the debtor and the real estate were located, gave constructive notice to the world that De Paul Holding Corp. was still listed as the record owner of the property in question. A bona fide purchaser is one who would have checked the appropriate recording office for real estate transfers and who would not have learned of any impairment in the transferor's title. *Doyle v. Lazarro,* 33 A.D.2d 142, 306 N.Y.S.2d 268 (App.Div. 3d Dept.1970) aff'd, 33 N.Y.2d 981, 353 N.Y. S.2d 740, 309 N.E.2d 138 (1974). As was stated in *Ricker v. United States,* 417 F.Supp. 133 (D.C.Me.1976) at page 140:

"... a purchaser ... cannot claim protection as a bona fide purchaser where, as here, it appears from documents and facts known at the time of purchase that there may be a substantial defect in the seller's claim of title."

Under Section 291 of the New York State Real Property Law, a bona fide purchaser, in this case, would not have had constructive notice on September 28, 1982 (the date the Chapter 11 was commenced) that the record owner, De Paul Holding Corp., had deeded the property to the debtor's limited partnership, Rochelle Terrace Associates, because the latter failed to record the deed before the Chapter 11 case was commenced. Instead, the prospective bona fide purchaser would have been imputed with notice that

the record owner was still De Paul Holding Corp. Even a bona fide purchaser may not ignore the fact that the debtor was not listed as the record owner when the Chapter 11 case was commenced. With such notice, a bona fide purchaser would be alerted if the debtor attempted to grant him a mortgage on property which the record reflects was not even owned by the debtor. The trustee, who claims to stand in the shoes of such a hypothetical purchaser, may not close his eyes to that which is imputed to him by constructive notice and assert greater rights than those of a bona fide purchaser, who is charged with notice as to the identity of the recorded owner of the real estate in question. As was stated in *Barringer v. Lilley,* 96 F.2d 607 at 613 (9th Cir.1938):

"It being established that record title was in the Title & Trust Company, it follows that all creditors were creditors with notice of the fact that Owens and his associates were *not* owners of the tract, at least so far as the record was concerned—which is notice to all the world.

■ As between the parties thereto and their successors in interest with actual notice the unacknowledged and unrecorded declaration of trust was as good as though all formalities had been complied with. This much must be conceded .... As to other persons, without notice thereof, it was as much a nullity as if it had never existed."

Accordingly, the Chapter 11 trustee of the debtor, the Minton Group, Inc., standing in the shoes of the debtor, may not assert that he was blind to the notice imputed to a hypothetical bona fide purchaser "from the debtor" at the time the Chapter 11 case was commenced.

Indeed, the trustee confuses lack of knowledge with lack of notice. Thus, it has been held that the words "without regard to any knowledge" as expressed in Code § 544, were not meant to nullify the rights of an earlier transferee who "has given the rest of the world actual or constructive notice ...." *McCannon v. Marston,* 679

F.2d 13 at 16 (3rd Cir.1982). In that case, the appellant purchased an interest in a condominium located in a building owned by a real estate partnership. The appellant never recorded her interest, although she remained in clear and open possession. The trustee in bankruptcy of the partnership sought to exercise the rights of a hypothetical bona fide purchaser pursuant to Code § 544(a)(3) and cut off the appellant's equitable interest. The Court of Appeals for the Third Circuit held that the appellant's possession was constructive notice to subsequent purchasers, including the trustee as a hypothetical purchaser under Code § 544(a)(3).

### The Strong Arm Is On The Wrong Body

There is a more fundamental reason why the trustee may not prevail in this case. The Chapter 11 trustee was appointed in the involuntary case filed against the debtor, Minton Group, Inc. That the debtor is the sole general partner and a twenty-five percent investor in the limited partnership known as Rochelle Terrace Associates does not mean that the limited partnership entity is to be regarded as the debtor in this case. All of the stock of the debtor, Minton Group, Inc. is owned by an individual named Walter Wlodarski. However, the debtor, Minton Group Inc., as the sole general partner in Rochelle Terrace Associates, operates all of the business and manages all of the property of the limited partnership under a limited partnership agreement. These facts would make Rochelle Terrace Associates an "affiliate" of the debtor within the meaning of that term, as defined in Code § 101(2)(c), which provides:

"§ 101. Definitions. In this title—

\*    \*    \*    \*    \*    \*

(2) 'affiliate' means—

\*    \*    \*    \*    \*    \*

(C) person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor;"

The Chapter 11 trustee of the Minton Group, Inc. contends that he may assert his strong arm powers on behalf of the debtor's affiliated limited partnership, Rochelle Terrace Associates, and cites in support of this position the case of *In re Imperial "400" National, Inc.,* 429 F.2d 671 (3rd Cir.1970). However, that case involved an issue as to which bankruptcy court had jurisdiction when a Chapter X reorganization case was filed under the former Bankruptcy Act by a corporate general partner in the United States District Court for the District of New Jersey, and a separate and subsequent bankruptcy petition was filed on behalf of the affiliated limited partnership in the District Court for the Western District of Michigan. In effect the two bankruptcy cases were consolidated for purposes of joint administration in the New Jersey court where the earlier Chapter X case had been filed. There was no issue presented as to whether or not the general partner's Chapter X trustee could exercise powers on behalf of a limited partnership that was not a debtor in a bankruptcy proceeding. Both the general partner and the limited partnership were debtors in separate bankruptcy jurisdictions. The Chapter X court in New Jersey was regarded as having jurisdiction over the property of the limited partnership debtor in Michigan, notwithstanding that the Chapter X general partner did not have title to the Michigan property, because the partnership business was regarded as an integral part of the Chapter X general partner's entire business operation. Therefore, the artificial concept of a separate entity was not allowed to hinder the reorganization of the Chapter X general partner. The court allowed the general partner's assets to be administered together with those of the limited partnership, rather than through separate bankruptcy cases.

In the instant case, only the general partner Minton Group, Inc., is a debtor in a bankruptcy case. The affiliated limited partnership, Rochelle Terrace Associates, is not a debtor in any bankruptcy case. It is understandable that the trustee of the Minton Group Inc. might seek to protect the debtor's interests in the property owned by

the limited partnership and assert that the automatic stay imposed under Code § 362 extends to the limited partnership so as to protect the general partner's interests in the limited partnership. See *In re Elemar Associates,* 3 B.C.D. 958 (Bkrtcy.S.D.N.Y. 1977). It is another thing, however, for the trustee of the general partner, Minton Group, Inc., to assert the rights of a hypothetical bona fide purchaser of real property from the limited partnership, Rochelle Terrace Associates, when the debtor in this case is the general partner only. The limited partnership, Rochelle Terrace Associates, is a separate entity, recognized under Code § 101(2)(C) as an affiliate of the debtor, but not the debtor. The Chapter 11 trustee of Minton Group, Inc. is empowered under Code § 544 to assert the strong arm powers of a hypothetical bona fide purchaser of real property from Minton Group, Inc.; "the debtor." He cannot assert those strong arm powers on behalf of another non-debtor entity, i.e., Rochelle Terrace Associates. Although Rochelle Terrace Associates is an affiliate of Minton Group, Inc., it does not follow that the latter's Chapter 11 trustee is also the trustee of Rochelle Terrace Associates. The Chapter 11 trustee may exercise his strong arm for the general partner, but he may not strike any blows on behalf of the non-debtor limited partnership.

In a case involving a strikingly similar factual pattern, a Chapter 11 trustee of the sole general partner in seven limited partnerships sought to assume the limited partnership agreements as executory contracts under Code § 365. A voluntary Chapter 11 petition had previously been filed by the sole general partner, whose Chapter 11 trustee desired to continue the operations of the partnerships in the debtor's place. The limited partners in *In re Harms,* 10 B.R. 817 (Bkrtcy.Col.1981) had not consented to the continued management of the limited partnerships by the debtor's Chapter 11 trustee. The bankruptcy court denied the Chapter 11 trustee's application to assume the executory contracts because he could neither function as a general partner nor was he the trustee for the limited partnerships.

Indeed, the court explained that the bankruptcy of the sole general partner dissolved the limited partnerships so that their assets had to be distributed and not used for the continuation of new partnership business.

That the Chapter 11 trustee of the general partner in a limited partnership is not the substitute for the general partner for purposes of managing the limited partnership is made clear by the following statement in 1 *Norton Bankruptcy Law and Practice* Part 8—Page 10:

"Even if some or all partners file bankruptcy petitions, the partnership itself will not be in bankruptcy. Absent a voluntary or involuntary petition against the partnership, an interest of the bankrupt partners in the partnership will be treated as an asset of their estates."

Although Code § 101(8)(B) refers to the term "limited partnership" in expressing that a corporation should not be regarded as a limited partnership, there is no separate treatment of limited partnerships in the Bankruptcy Code as under Section 5(k) of the former Bankruptcy Act. Reference must therefore be made to state law for the status of a limited partnership's assets when its sole general partner is in bankruptcy.

Section 62(5) of the New York Partnership Law provides that the bankruptcy of a partner causes a dissolution of the partnership. Moreover, Section 68 of the New York Partnership Law provides:

"§ 68. Right to Wind Up

Unless otherwise agreed the partners who have not wrongfully dissolved the partnership or the legal representative of the last surviving partner, not bankrupt, has the right to wind up the partnership affairs; provided however, that any partner, his legal representative, or his assignee, upon cause shown, may obtain winding up by the court."

Article 8 of the New York Partnership Law, entitled "Limited Partnerships", Section 90 et seq., (McKinney's Consolidated Laws of New York Vol. 38), does not specifically distinguish between the dissolution

and winding up of a limited partnership as opposed to a general partnership. As stated in *Executive House Realty v. Hagen,* 108 Misc.2d 986, 438 N.Y.S.2d 174 (Sup.Ct. Queens County 1981) at p. 179:

> " . . . limited and general partnerships are identical forms of doing business except for distinctions between the rights and liabilities of limited and general partners."

On dissolution of a partnership, the entity is not then terminated, but continues, according to Section 61 of the New York Partnership Law, until the winding up of partnership affairs is completed. See *Rossmoore v. Commissioner of Internal Revenue,* 76 F.2d 520 (2nd Cir.1935).

■ The winding up of the affairs of a partnership whose general partner's bankruptcy caused its dissolution, must be performed by the remaining solvent partners and not the trustee of the bankrupt partner. *Brandt & Brandt Printers v. Klein,* 220 F.2d 935 (2nd Cir.1955). Thus, the assets of the debtor in this case, who was a general partner, and the assets of the limited partnership, are treated separately. The trustee of the general partner may not exercise managing authority over, nor assert strong arm powers on behalf of, the non-debtor limited partnership.

### Hypothetical Judicial Lien Creditor or Unsatisfied Execution Creditor

■ Although the imputed notice to the trustee that the debtor, Minton Group, Inc. was not the record owner when the Chapter 11 case was commenced precludes him from qualifying as a hypothetical bona fide purchaser under Code § 544(a)(3), no such taint applies under Subsections (a)(1) or (a)(2). Code § 544(a)(1) gives the trustee the rights of a hypothetical judicial lien creditor of the debtor when the case was commenced, whether or not such a creditor existed. Additionally, Code § 544(a)(2) arms the trustee with similar rights of a hypothetical unsatisfied execution creditor of the debtor. Constructive notice does not preclude one from becoming a judicial lien creditor or an unsatisfied execution creditor

as it does in the case of a bona fide purchaser, where such notice affects the purchaser's bona fide status. See *In re Investors Funding Corp. of New York,* 452 F.Supp. 771 (S.D.N.Y.1978) aff'd 633 F.2d 204 (2nd Cir.1980). However, this distinction is of no comfort to the Chapter 11 trustee in this case because the hypothetical judicial lien creditor in Code § 544(a)(1) and the hypothetical unsatisfied execution creditor in Code § 544(a)(2) must extend credit to "the debtor." As was previously stated with respect to the hypothetical bona fide purchaser in Code § 544(a)(3), the trustee in this case may not assert those strong arm powers on behalf of the limited partnership, Rochelle Terrace Associates, which is a separate non-debtor entity.

### The Post-Petition Mortgage Recording

The trustee reasons that the recording of the purchase money second mortgage given by the limited partnership, Rochelle Terrace Associates, after the commencement of the involuntary Chapter 11 case against the general partner, Minton Group, Inc., offends the spirit of Code § 549. This section proscribes a transfer of property "of the estate" that occurs after the commencement of the case.

■ It is conceivable that the debtor general partner, Minton Group, Inc., might be regarded as having a sufficiently cognizable equitable interest in the assets of the limited partnership, Rochelle Terrace Associates, so as to satisfy the condition that the property in question must embrace property of the debtor's estate. See *In re Imperial "400" National, Inc.,* 429 F.2d 671 (3rd Cir. 1970); *In re Elemar Associates,* 3 B.C.D. 958 (Bkrtcy.S.D.N.Y.1977). Indeed, the term property of the estate is broadly defined in Code § 541(a)(1) to include "all legal or equitable interests of the debtor." However, the proscribed transfer must have occurred "after the commencement of the case." Even if the mortgage given by Rochelle Terrace Associates to De Paul Holding Corp. were to be treated as a transfer of property of the estate of the general partner, Minton Group, Inc., the transfer itself

occurred *before* the commencement of this case; it was merely the perfection of the transfer by the recording of the mortgage that occurred *after* the commencement of this case. Thus, no property of the estate was transferred after the commencement of this case so as to bring into play the avoiding powers of a trustee under Code § 549.

## CONCLUSIONS OF LAW

1. The Chapter 11 trustee of Minton Group, Inc. does not qualify as a hypothetical bona fide purchaser of real property from the debtor, within the meaning of Code § 544(a)(3) so as to avoid the perfection of the mortgage that was given by Rochelle Terrace Associates to the defendant's assignor, De Paul Holding Corp., and which was recorded after the commencement of this case.

2. The Chapter 11 trustee of Minton Group, Inc. may not assert the strong arm powers in subsections (a)(1), (a)(2) or (a)(3) of Code § 544 on behalf of the debtor's limited partnership, Rochelle Terrace Associates, because Rochelle Terrace Associates is not the debtor in this case.

3. The mortgagee's recording of the mortgage, previously given by Rochelle Terrace Associates, after the commencement of this case against Minton Group, Inc., is not a post-petition transfer of property of the estate within the meaning of Code § 549.

4. The trustee has not sustained his case for avoiding the mortgage in question. Accordingly, the complaint is dismissed.

SUBMIT ORDER on notice.